In the Matter of the Application of JAMES G. ADAMS and Others, Petitioners, for an Order against JOHN McKENZIE, Commissioner of Docks of the City of New York, and Others, Respondents.

Supreme Court, Special Term, New York County, November 8, 1941.

*Albert B. Breslow,* for the petitioners.

*William C. Chanler, Corporation Counsel [Oscar L. Tucker of* counsel], for the respondents.

MILLER, J. Petitioners served as airport inspectors at Floyd Bennett Field until it was taken over by the United States Navy on May 26, 1941. At that time they were discharged and their names placed upon a preferred list in accordance with the provisions of section 31 of the Civil Service Law. In the present proceeding they claim that they are entitled to appointment to positions at LaGuardia Airport which they contend are presently occupied either by provisionals or by civil service employees working out of their titles. Four of the five petitioners are honorably-discharged World War veterans. Two of them are performing military duty at the present time and maintain that they are entitled to the difference between their civil and their military pay under section 246 of the Military Law.

From the very inception of operations at LaGuardia Airport, long before there was any thought that the United States Navy would take over Floyd Bennett Field, the personnel at LaGuardia Airport was organized under a wholly different setup from that which prevailed at Floyd Bennett Field. Whereas the traffic at Floyd Bennett Field had consisted almost entirely of student training, sight-seeing flights, and limited naval operations, and to the extent of only about one per cent of traffic controlled or directed by radio, LaGuardia Airport was designed to become the busiest and most important civil airport in the world. The air traffic at LaGuardia Airport consists almost entirely of scheduled carrier liners which are directed and controlled in landing and taking off in practically all kinds of weather by a two-way radio communication system. The daily air traffic consists of approximately three hundred large passenger airliners. Aviation experts in control of operations at LaGuardia Airport, acting in good faith and using their best technical and expert judgment, subdivided the work at the field into various categories. The electrical work was placed in charge of a foreman of electricians appointed as the result of an appropriate competitive civil service examination. The work of supervising the laborers and keeping the properties at LaGuardia Airport in good maintenance and repair was assigned to a foreman of laborers also chosen as the result of a competitive civil service examination. Work which was clerical in nature was placed in charge of a clerk, grade 2, chosen through competitive examination. Traffic control work was assigned to a traffic control operator.

At Floyd Bennett Field the operations had been in charge of airport inspectors who were jacks-of-all-trades and supervised electrical work, ground work and maintenance, traffic control, clerical work, etc. From the very first it was decided that the maintenance of the highest possible standard of safety and efficiency at LaGuardia Airport required highly trained specialists instead of men of general experience and training such as the airport inspectors employed at Floyd Bennett Field. At the time the work was thus subdivided at LaGuardia Airport no one anticipated that Floyd Bennett Field would later on be taken over by the United States Navy, leaving the airport inspectors employed at that field without positions. Had an attack upon the legality of the subdivision of the work at LaGuardia Airport been instituted at that time, through an appropriate legal proceeding, there can be little question that it would have been unsuccessful. No court would have substituted its own judgment for that of the aviation experts who devised the setup of personnel for LaGuardia Airport. There

was certainly no obligation on the part of the city authorities to create a setup of personnel and subdivision of work at LaGuardia Airport which was identical with that existing at Floyd Bennett Field. It would have been manifestly improper for a judicial tribunal to rule that the appropriate city authorities had no right to place various phases of the work at LaGuardia Airport in charge of highly specialized experts instead of leaving all the operations in the hands of men with only general experience and training, such as airport inspectors.

As the result of the setup created at LaGuardia Airport from the beginning of operations, there never was and is not presently, any position vacant there which any of the petitioners is fitted or qualified to fill. The work at LaGuardia Airport is being performed by qualified persons working under appropriate titles and chosen as the result of competitive examination. To appoint the petitioners to the positions presently filled by such persons at LaGuardia Airport would require the city authorities to establish new and unnecessary positions under the title of airport inspector or else to terminate the setup of personnel and subdivision of work which has existed at LaGuardia Airport since it came into being and to substitute therefor the setup which prevailed at Floyd Bennett Field until it was taken over by the Navy. This the petitioners may not ask the court to direct. This is not a case where work formerly performed by the petitioners has been absorbed by others junior to them after their discharge. The petitioners are unable to point to any employee at LaGuardia Airport who performs the duties formerly performed by petitioners.

Although some of the petitioners are honorably-discharged war veterans, this fact only gives them the right to be transferred to other positions which they are fitted to fill *if such positions are vacant.* A public official is not obliged to discharge other employees in order to open a position for a veteran. (*Matter of Clancy* v. *Halleran*, 263 N. Y. 258, 262.)

The provisions of the Military Law, relied upon by those petitioners who are in the military service, do not confer a right to the difference between their civil and military pay after their civil positions have been abolished in good faith because there is no further need for such positions.

The statute was designed to protect from impairment the standing of civil service employees because of military service. It was not intended to improve their rights over what these would have been had they performed no military service.

Although at one time there were two airport inspectors at LaGuardia Airport, one of them was in charge of seaplane opera-

tions which were then under the jurisdiction of LaGuardia Airport but which are now in charge of Pan-American Airlines, a private concern. The other airport inspector was one of the petitioners, Levy. He appears to have been temporarily transferred to LaGuardia Airport from Floyd Bennett Field. No new position was created at LaGuardia Airport to which he was assigned. Since he left LaGuardia Airport, no airport inspector has been appointed in his stead and there is no need for such appointment. The work which said petitioner performed while he was assigned to LaGuardia Airport was merely to relieve the director of various routine details. These duties have been absorbed by the manager of operations at LaGuardia Airport who was transferred from Floyd Bennett Field on the termination of municipal operation of that field.

Although the court sympathizes with the petitioners in their present predicament, it is constrained for the reasons above indicated to deny their application. To do otherwise would be to overrule the competent city authorities in charge of airport operations as to matters peculiarly within their expert knowledge without any evidence whatsoever of bad faith on their part.

Motion denied.